**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HENRY DES LONGCHAMPS, et al.,** <br><br> Plaintiffs, <br><br> v. <br><br> **ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY,** <br><br> Defendant. | Civil Action No. 13-1704 (JDB) |

## MEMORANDUM OPINION

As Washington, D.C. residents will remember, in June 2012 a storm cell (called a "derecho") of driving rains and high winds swept through the mid-Atlantic region, knocking out power and damaging buildings—plaintiff Henry des Longchamps' home included. After the storm, des Longchamps filed a claim with defendant Allstate (his insurance provider), which paid for repairs to his property. But the parties disagree about the price tag for these repairs, and des Longchamps has asked the Court to appoint an umpire to resolve this dispute. There is, however, one problem with his request: the parties' insurance contract makes plain that this action—filed over a year after the derecho inflicted its damage—comes too late. The Court will therefore grant Allstate's motion for summary judgment and deny des Longchamps' cross-motion.[1]

## BACKGROUND

As explained in the complaint, "[o]n or about June 29, 2012, during the Washington Area derecho, [des Longchamps' home] sustained damages covered by the Allstate [i]nsurance policy."

---

[1] See, e.g., Def.'s Mot. for Summ. J. [ECF No. 23] ("Def.'s Mot."); Def.'s Mem. in Support of Def.'s Mot. [ECF No. 23-1] ("Def.'s Mem."); Pls.' Mem. in Support of Pls.' Opp'n to Def.'s Mot. & Cross-Mot. for Summ. J. [ECF No. 26] ("Pls.' Opp'n"); Def.'s Reply to Pls.' Opp'n [ECF No. 28] ("Def.'s Reply"); Def.'s Opp'n to Pls.' Mot. [ECF No. 29].

1

Compl. [ECF No. 1-2] ¶ 5. Des Longchamps filed a claim with Allstate, and he hired Maggio Roofing Company to make the necessary repairs to his roof, detached garage, and fence. See id. ¶¶ 6–7. Indeed, des Longchamps signed an agreement with Maggio Roofing, whereby—in exchange for its repair work—that company would be entitled to directly collect "any and all insurance rights, benefits, and proceeds" paid by Allstate on des Longchamps' claim.[2] Ex. R to Def.'s Mot. [ECF No. 24-11] at 2.

At this point, everyone agrees that Maggio Roofing has completed (or is contractually obligated to complete) des Longchamps' repairs. Compare Def.'s Mem. at 10 (calling these material facts as to which there is no dispute) with Pls.' Opp'n at 5–6 (failing to dispute these facts). But important disagreements remain. An Allstate claims adjuster estimated that the derecho caused more than $156,000 in damages to des Longchamps' property. See Ex. H to Def.'s Mot. [ECF No. 24-1] at 32. And in March 2013, Allstate issued its final check to des Longchamps in accordance with its valuation of the derecho claim. See id. at 2. But des Longchamps was not satisfied with Allstate's estimate and payment. On June 28, 2013, he demanded that his claim go through an appraisal process before two appraisers and an umpire. See Ex. I to Def.'s Mot. [ECF No. 24-2] at 2, 3. The parties did not see eye to eye on these appointments though—Allstate raised

---

[2] As a result of this assignment, Maggio Roofing has become a party to this case. See June 19, 2014 Order [ECF No. 22] at 1–2. The company has "agree[d] to ratify and adopt, as its own, the allegations and claims set forth in the [c]omplaint and the allegations and defenses set forth in the [a]nswer to the [c]ounterclaim for [d]eclaratory [r]elief . . . filed by des Longchamps in this [a]ction." Stipulation [ECF No. 21] at 2. There is one complication, however. While the Court accepted this stipulation and added Maggio Roofing to this case, Maggio Roofing's counsel—who also represents des Longchamps—continued to file motions and oppositions on behalf of des Longchamps without explicitly mentioning whether these materials were also submitted on Maggio Roofing's behalf. See, e.g., Pls.' Opp'n at 1. Allstate has therefore asked this Court to consider Allstate's summary-judgment motion "conceded as to Maggio Roofing." Def.'s Reply at 15. But the Court declines to do so for two reasons. First, in response to the parties' stipulations, the Court has allowed Maggio Roofing to ride des Longchamps' coattails in this litigation without requiring the parties to formally amend their pleadings, and it sees no reason to require such formalism now. Second, the same counsel represents all the plaintiffs in this case, and—without any clear indication to the contrary—the Court presumes that counsel filed his motions and other papers on behalf of all of those plaintiffs. The Court will therefore decide the parties' cross-motions on the merits, and its use of "des Longchamps" in this Memorandum Opinion should be read to refer to all the plaintiffs in this case—including Maggio Roofing.

questions about the impartiality of des Longchamps' proposed appraiser, and the umpire withdrew from the dispute before any appraisal could be made. See, e.g., Ex. P to Def.'s Mot. [ECF No. 24-9] at 2 (designated umpire withdrew because of "[t]he complexity of this claim along with other details [that] were not revealed . . . prior to [his] accepting the position").

In light of these disagreements, on September 18, 2013, des Longchamps filed the present complaint, which asks the Court to appoint an umpire to reconcile the parties' positions. See Compl. at 5. To justify this request, des Longchamps invokes a provision in his insurance contract with Allstate. The provision—headlined "Appraisal"—explains that "[i]f [the parties] fail to agree on the amount of loss, either party may make written demand for an appraisal," at which point both parties will select "a competent and impartial appraiser." Ex. A to Def.'s Mot. [ECF No. 23-2] ("Insurance Contract") at 26. "The appraisers will [then] select a competent and impartial umpire," but if they cannot agree on an umpire, the parties "can ask a judge . . . to select an umpire" for them. Id. Finally, these appraisers (and, if necessary, the umpire as tiebreaker) are obliged to determine "the amount of loss" that Allstate must pay to satisfy the claim. Id.

This appraisal clause is not, however, the only contractual provision relevant to this suit. The contract also imposes some limits on the ability of the parties to litigate their disputes in court. Specifically, the "Action Against Us [i.e., Allstate]" clause says:

> No one may bring an action against [Allstate] in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought . . . unless: a) there has been full compliance with all policy terms; and b) the action is commenced within one year after the inception of loss or damage.

Id. at 27 (emphasis omitted). Largely on the strength of this litigation-limitations clause, Allstate has moved for summary judgment on des Longchamps' appointment-of-an-umpire claim. The insurer argues (among other things) that the claim is time-barred as a matter of law, because des

Longchamps waited until September 2013 to file his complaint—which is several months after the first anniversary of the June 2012 derecho.

## LEGAL STANDARD

The standard that controls this case is a familiar one.  Summary judgment is appropriate if the evidence in the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  It is the moving party's burden to demonstrate the absence of such genuine (and material) disputes—usually through use of documents, depositions, declarations, and other materials.  See id. 56(c)(1); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  For the Court to find a "genuine" issue, there must be evidence in the record from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In other words, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial"—"mere allegations or denials" or the "mere scintilla of evidence" in opposition to summary judgment is not enough.  Id. at 248, 252 (internal quotation marks omitted).  Likewise, for a dispute to concern a "material" fact, the fact must be one "that might affect the outcome of the suit under the governing law" (or, in this case, the governing contract).  Id. at 248.  The inquiry, in short, is this:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251–52.

## DISCUSSION

The Court will grant summary judgment to Allstate for (at least)[3] one reason:  des Longchamps filed this civil action on September 18, 2013, see Compl. at 2, which is several

---

[3] In addition to the timeliness argument discussed here, Allstate contends that it is entitled to summary judgment "because Allstate has resolved the claim . . . asserted by des Longchamps under the [p]olicy," and thus "his right to appraisal for the [c]laim no longer exists under the terms of the [p]olicy." Def.'s Mot. at 2.  Because the Court

4

months outside the litigation deadline memorialized in the parties' insurance contract. As courts in this Circuit have explained, "[c]ontractual provisions limiting the period within which insurance policy-holders may validly initiate a lawsuit are generally enforceable under District of Columbia law." Martinez v. Hartford Cas. Ins. Co., 429 F. Supp. 2d 52, 56 (D.D.C. 2006) (citing, for example, Bailey v. Greenberg, 516 A.2d 934, 938–40 (D.C. 1986)). And the contract at the center of this case includes just such a provision. It says: "[n]o one may bring an action against [Allstate] . . . unless . . . the action is commenced within one year after the inception of loss or damage." Insurance Contract at 27. Des Longchamps suffered his property damage during the June 29, 2012 derecho, which means he was obliged under his contract to bring any legal claim he might have against Allstate by June 29, 2013. He plainly failed to do so. Hence, Allstate merits judgment as a matter of law on this late-filed claim.

Of course, des Longchamps could have argued that the limitations period is unenforceable in this case—perhaps Allstate waived application of the provision, or maybe equitable estoppel counsels against enforcement. See, e.g., Martinez, 429 F. Supp. 2d at 57–61. But he has not raised any such arguments. Instead, des Longchamps tries to shift the timeline in this case, arguing that the operative date is not June 29, 2012 (the day the derecho struck), but several months later—October 29, 2012. See Pls.' Opp'n at 7. On that date, des Longchamps explains, Hurricane Sandy hit the District of Columbia, and that storm, too, damaged his property. See id. at 1–2. As this argument goes, because des Longchamps' home was damaged a second time, his insurance claim did not fully accrue until October, and thus his complaint—filed in September 2013—should be considered timely under Allstate's one-year limitations period. See id. at 7 ("While the loss began in June 2012 . . . , the entirety of damage to des Longchamps' property . . . did not occur until

---

will grant Allstate's motion for summary judgment based on the litigation-limitations provision in the parties' insurance contract, the Court declines to address Allstate's alternative claim-satisfaction argument.

October 29, 2012 when Hurricane Sandy struck the area."). But this argument cannot save des Longchamps from summary judgment in Allstate's favor for three reasons.

To start with, des Longchamps did not rely on the October hurricane as a basis for his umpire demand until he responded to Allstate's motion for summary judgment in this case—and that is far too late. To be sure, the parties' discovery in this case was broad, raising questions regarding the entirety of des Longchamps' property damage—including at least a few references to his hurricane claim. See, e.g., Ex. 5 to Pls.' Opp'n [ECF No. 26-5] ("Request for Admissions") at 6. But in the end, des Longchamps chose to rely on just one aspect of his 2012 losses. Indeed, his complaint refers to property damage suffered on just one date as a result of just one storm: "On or about June 29, 2012," he alleges, "during the Washington Area derecho, the insured property . . . sustained damages covered by the Allstate [i]nsurance policy." Compl. ¶ 5. The complaint says nary a word about hurricanes or additional losses suffered months later in October 2012. Thus, to allow des Longchamps to leverage this October storm would, in effect, allow him to "amend [his] complaint or broaden [his] claims through summary judgment briefing"—which of course he cannot do. Dist. of Columbia v. Barrie, 741 F. Supp. 2d 250, 263 (D.D.C. 2010).

Moreover, even if the Court were to (generously) construe des Longchamps' complaint as asserting a claim that arose as a result of both the June and the October storms, this reading would not change anything. As the parties' insurance contract makes clear, the litigation clock begins to tick from "the <u>inception</u> of [the] loss or damage," Insurance Contract at 27 (emphasis added), and "inception" is another way of saying "commencement" or "initiation" or "<u>beginning</u>," Webster's Third New Int'l Dictionary 1141 (1993) (emphasis added). Des Longchamps does not (and, indeed, cannot) deny that the loss to his property <u>began</u> on June 29, 2012 when the derecho's winds and rain hit Washington, D.C. This means that his claimed October hurricane damages are

irrelevant (contractually speaking) to the timeliness question. Courts are not in the business of denying summary judgment on the basis of such irrelevant—in other words, immaterial—facts. See Plazas-Martinez v. Drug Enforcement Admin., 891 F. Supp. 1, 3 (D.D.C. 1995) ("Plaintiff's submission does create a dispute on an issue of fact; it is not a material issue, however.").

Finally, it is not just des Longchamps' pleading and contract that undercut his hurricane-based defense. The evidence in the record is also stacked against him, as it puts beyond dispute the conclusion that he suffered not a single loss (that spanned from June to October 2012), but instead suffered two separate losses that led to two separate insurance claims. Allstate, after all, assigned different claim numbers to des Longchamps' two losses, and the parties were careful to use these numbers to distinguish between des Longchamps' derecho and hurricane claims. See, e.g., Ex. S to Def.'s Reply [ECF No. 28-1] at 3, 6 (listing the claim number for des Longchamps' hurricane loss, and noting that "none of the work covered by the [c]laim related to repairs . . . pursuant to" the derecho claim). Moreover, until des Longchamps filed his opposition to Allstate's summary-judgment motion, even he sought to resolve the claims separately. For example, when des Longchamps lodged his appraisal demand with Allstate, he did so in separate emails—one email concerned the derecho loss (and referenced that claim's identification number), and the other concerned the Sandy loss (and did the same for the hurricane's number). Compare Ex. I to Def.'s Mot. at 3 (appraisal demand for derecho claim) with Ex. T to Def.'s Reply [ECF No. 28-2] at 3 (appraisal demand for hurricane claim). Thus, it is quite clear from the evidence that both Allstate and des Longchamps treated the losses as separate claims.

Des Longchamps does not accept this conclusion, however. As he sees things, there remains a genuine dispute of material fact regarding how the parties treated these damages—that is to say, did the two storms lead to separate insurance claims for separate damages, or did the

parties think of the two claims as one and the same? But the evidence gets him nowhere. Consider first the checks Allstate issued to des Longchamps to pay for his property damage. Des Longchamps relies on copies of five checks from Allstate issued over a five-month period spanning the end of 2012 and the beginning of 2013. See Ex. 2 to Pls.' Opp'n [ECF No. 26-2] ("Checks") at 2–16. He believes that these checks—which "were intermixed over a period of time"—reveal that the parties did not really "distinguish[]" between the derecho claim and the hurricane claim. Pls.' Opp'n at 2. But the checks show no such thing. In fact, the checks demonstrate that the parties deliberately kept the two claims separate. Each check lists, for example, the claim number the check was issued to cover—derecho checks thus show claim number 0250335692, and hurricane checks show claim number 0264089418. Compare Checks at 8 (derecho check) with id. at 2 (hurricane check). And to further "distinguish[]" Allstate's payments, each check also describes what it is meant to pay for. The derecho checks say that they are "IN PAYMENT OF: WINDSTORM AND HAIL LOSS ON 6/29/2012," see, e.g., id. at 8, while the hurricane checks say that they are "IN PAYMENT OF: WINDSTORM AND HAIL LOSS ON 10/29/2012," see, e.g., id. at 2. In short, nothing about this evidence creates a genuine dispute over whether the parties treated des Longchamps' storm damage as a single insurance claim or as two separate claims. The latter wins hands down. See Anderson, 477 U.S. at 251–52 ("[T]he evidence . . . is so one-sided that one party must prevail as a matter of law.").

Des Longchamps next points to various documents produced by the designated appraisers in this case, including a "Declaration of Appraisers" form and the deposition testimony of one appraiser regarding the property loss. He argues that this evidence shows that "one . . . [a]ppraisal determination [was] issued for both of [his] losses, and it was issued in one document combining both losses." Pls.' Opp'n at 2–3. But again, this evidence does not create a genuine dispute as to

how the parties treated des Longchamps' claims.  First and foremost, the parties had nothing to do with this evidence—and for good reason.  The insurance contract, after all, required the parties to stay out of the appraisal process, allowing "impartial" appraisers to resolve the parties' dispute instead.[4]  Insurance Contract at 26.  And second, even if the Court were to consider these records as evidence of the parties' treatment of des Longchamps' losses, the evidence is not nearly as helpful as des Longchamps seems to think.  After all, both the Declaration of Appraisers and the deposition testimony refer to two <u>different</u> "date[s] of loss" (or "DOL[s]") and two <u>different</u> claim numbers for des Longchamps' property damage.  See Decl. of Appraisers at 2; Ex. 3 to Pls.' Opp'n [ECF No. 26-3] at 3–4.  This is, of course, entirely consistent with Allstate's position that des Longchamps suffered property damage on two separate occasions and that these damages resulted in two separate claims that triggered two separate litigation-limitations periods.

A similar story goes for des Longchamps' appeal to Allstate's request for admissions in this case.  As des Longchamps sees things, this document "refer[s] to both [the derecho and the hurricane] losses interchangeably," which (he contends) suggests that the two storms produced just one loss for purposes of Allstate's timeliness challenge.  Pls.' Opp'n at 3.  But this argument mischaracterizes both Allstate's and des Longchamps' positions.  From Allstate's perspective, its request for admissions does not refer to the losses "interchangeably"; that document instead carefully distinguishes between facts, damages, and payments related to "the Derecho Claim" and those concerning "the Sandy Claim."  Request for Admissions at 3, 6.  And des Longchamps' responses to Allstate's request for admissions confirm that even <u>he</u> considered the derecho and

---

[4] Indeed, des Longchamps' evidence makes clear that the appraisers' opinions should <u>not</u> be confused with the opinions of the parties.  The Declaration of Appraisers, for example, includes the signatures of the appraisers, who "solemnly sw[ore] that [they] w[ould] act with strict impartiality in making an appraisement" and that they were "not related to the insured, either as creditors or otherwise, and [were] not interested in said property or the insurance thereon."  Ex. 1 to Pls.' Opp'n [ECF No. 26-1] ("Decl. of Appraisers") at 2.  This document therefore tells the Court next to nothing about the parties' approach to these claims.

hurricane claims to be different (that is to say, not interchangeable). For example, Allstate asked des Longchamps to admit a series of facts concerning two checks he received on November 30, 2012. See Request for Admissions at 5–6. But des Longchamps was unwilling to fully concede Allstate's version of the facts surrounding these checks, because—as he read the evidence—"the claim numbers [on the checks] are reflected to be the same but there were 2 separate and distinct claims," Ex. 6 to Pls.' Opp'n [ECF No. 26-6] at 3 (emphasis added). Once again, everyone—the parties, the appraisers, and (now) the Court—agrees: there is no genuine dispute concerning whether the derecho and hurricane claims were "separate and distinct." Id. They were.

Because des Longchamps has failed to uncover any genuine issue of material fact concerning the parties' behavior, he is left with two contract-based arguments against summary judgment. Both fail to persuade. First, he suggests that he "had no reason to believe that legal action was necessary [by the contractual deadline of June 29, 2013]," and thus he was not obliged to bring his claim before that date. Pls.' Opp'n at 8. But this argument ignores the operative language in the insurance contract. The triggering event for the litigation-limitations clock is the "inception of [the] loss or damage," Insurance Contract at 27, and there is no provision in the contract that extends (or pauses) the one-year clock based on des Longchamps' subjective beliefs about the necessity of litigation. This Court's job is to interpret the contract's words, not to rewrite the contract to suit one party's interests. See, e.g., Peterson v. Dist. of Columbia Lottery & Charitable Games Control Bd., 673 A.2d 664, 667 (D.C. 1996) ("'The court is not at liberty . . . to insert words which the parties have not made use of.'" (quoting Harrison v. Fortlage, 161 U.S. 57, 63 (1896))). The contract, in short, says what it says, and des Longchamps' knowledge (or lack thereof) is irrelevant under that contract's terms.

Second, des Longchamps posits that he could not have brought his legal claim before June 29, 2013, because he had not yet complied with all the terms of his insurance contract. Specifically, he argues that the insurance contract required him to complete the appraisal-demand process before filing suit. Pls.' Opp'n at 8. But again, this argument misreads the parties' contract. To be sure, the contract requires des Longchamps to fully comply with the policy's terms before taking Allstate to court. See Insurance Contract at 27 ("No one may bring an action . . . unless . . . there has been full compliance with all policy terms . . . ."). But appraisal is not <u>required</u> under the policy. It is instead an alternative dispute mechanism that can be invoked at either party's <u>option</u>. "If you and we fail to agree on the amount of loss," the contract explains, "either party <u>may</u> make written demand for an appraisal." Id. at 26 (emphasis added). "'[M]ay,'" it should go without saying, "does not mean 'must.'" Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 304 (3d Cir. 2012); see also Levers v. Anderson, 326 U.S. 219, 223 (1945) ("No other language . . . persuades us that the 'may' [in the governing regulation] means must . . . ."). Thus, des Longchamps could "full[y] compl[y] with all policy terms" without ever demanding appraisal—which means that the parties' ongoing appraisal negotiations cannot excuse des Longchamps' tardiness. This lawsuit simply comes too late.

## CONCLUSION

The Court will therefore grant Allstate's motion for summary judgment and deny des Longchamps' cross-motion. A separate Order will issue on this date.

/s/

JOHN D. BATES
United States District Judge

Dated:  May 4, 2015